## WACKERLE *v.* MUTUAL LIFE INS. CO.[*]

*(Circuit Court, E. D. Missouri.* October 30, 1882.)

1. LIFE INSURANCE—BURDEN OF PROOF.

    In an action by a wife on the policy of insurance taken out on her husband's life, the burden of proof is on the plaintiff to prove the death of her husband and her right to recover.

2. IDENTITY OF PERSON—PROVINCE OF JURY.

    Where a witness was called who represented himself to be the husband of the plaintiff, while the plaintiff denied that he was her husband, and the witness was ignorant of many circumstances in the life of the person whom he personated, and the testimony adduced in support of his identity was conflicting, it is the peculiar province of the jury to decide the question of identity from all the evidence adduced.

3. SAME—WEIGHT OF EVIDENCE.

    Where there is a vast conflict of testimony, in which there is a question of identity to be established, it is for the jury first to consider which witnesses had the best opportunity and were most likely to know the facts, and second, to give to those witnesses whose long acquaintance and special opportunities were such as to enable them to carry in their recollection the identity of the particular party, greater weight than those who only casually knew the party.

4. SAME—CONCLUSIVENESS OF VERDICT.

    Where the court alluded to and commented on the evidence sharply against plaintiff's claim so far as identity depended on the exhumed skeleton of the party alleged to have been her husband, and the jury reached the conclusion that it was the skeleton of her husband, killed in a railroad accident as alleged, and that the witness representing himself to be her husband was not what he pretended, which was their exclusive province, the court will not interfere with the verdict.

This was a suit to recover money alleged to be due by the terms of a policy of insurance upon the life of William Wackerle, deceased, issued by defendant for the benefit of plaintiff, his wife; and also to recover a premium paid by plaintiff to defendant by mistake, after the assured's death. The defendant in its answer denied that the terms of the policy had been complied with by the plaintiff, and denied also that the assured was dead. The case was tried before a jury. The testimony was very conflicting. The plaintiff introduced evidence tending to prove that her husband, the assured, had been killed by a railroad accident, and that in ignorance of his death she had subsequently paid a premium to defendant. The defendant thereupon placed a witness upon the stand who swore that he was William Wackerle, the plaintiff's husband, whose life had been insured by the policy sued upon. It was also shown that he had in the

*Reported by B. F. Rex, Esq., of the St. Louis bar.

character of William Wackerle drawn several thousand dollars from the United States treasury in pensions. But this witness proved upon examination to be ignorant of a number of important events in the life of the real William Wackerle, such as his wife's having given birth to child on the night she and her husband arrived from Sacramento, California, at Quincy, Illinois; and the fact that William Wackerle was in Cincinnati in the year 1869 and at another time in Marshall, Texas. The witness was also ignorant as to the age, sex, place of birth or burial of five out of eight children he said the plaintiff had borne to him.

The evidence was also conflicting as to other points, which need not be here detailed.

TREAT, D. J., (*charging jury.*) You have been detained here for a considerable length of time on a case somewhat peculiar in its character, the solution of which must depend almost entirely on you; in other words, the main question at issue is a simple question of fact, of which jurors are by law the sole judges. This is a suit on a policy issued January 24, 1867, in which the party whose life was insured is described as a resident of Milwaukee, and a laborer. The policy was issued on the life of the husband for the benefit of the wife. She contends that her husband was killed December 25, 1872, in Louisiana, near Shreveport, and on that hypothesis she offered to the company proof of loss—that is, the required proof under the policy—that he was dead on February 4, 1873. On January 24, 1873, she paid the premium,—$131.44,—also on the hypothesis that he was not then dead, or, if dead, the fact of his death was unknown to her; so that, if the result of your verdict is that the plaintiff in this case is entitled to recover, she will recover the $4,000 insurance, with interest from March 6, 1873. The loss was payable six months after proof was made, and that, by my computation, would bring it to March 6, 1873; and as to the payment of $131.44, of course no interest should run against that until the company was informed or notified that death had previously occurred.

For the purposes of this case, if you find for the plaintiff, you will compute interest on the $4,000 and on the $131.44 from March 6, 1873. Now, the question of fact is a very difficult one, in which you can receive little or no aid from the court; but it may not be improper for the court to direct your attention in a very general way to such matters as may aid you in the analysis of the testimony. Bear in mind that the loss is alleged to have occurred on the twenty-fifth of December, 1872. Bear in mind, also, the circumstances and facts

connected with the death of the particular person there, and whether the facts substantiate his identity—not in name only, but in person—as the husband of the plaintiff here. If my memory serves me correctly with regard to this testimony, there was something in the nature of an epidemic at that time at Shreveport, whereby a great many persons dying were buried in the Potter's field, and among them persons killed on the railroad. Now, what was the nature of that accident? If it be, as some witness suggested who was familiar with the accident, that his leg was crushed just above the knee, you will have then an *indicia* or mark to guide you in the further progress of the case; and also this broken tooth, on the other hand. It appears from the testimony of plaintiff that this tooth, about which there seems to be no special difficulty, seems to have been lost and disappeared from the husband of this plaintiff prior to that period of time.

It seems this body was exhumed twice,—the first time with reference to the suit then pending, and long after the death. The body could be recognized only by such marks as would not be likely to disappear after interment for a long period of time. The broken tooth and fragment of a garment seemed to be the main reliances on the the one hand for identification; and on the other hand, on the second exhumation, an unbroken leg and no bones crushed at all. Hence, as to the purposes of identity there, and as to what occurred when the bodies were exhumed, the question arises, was this the man killed by the railroad? You will have to determine with regard to these matters, bearing in mind this doctor's statement—Dr. Moore, I think, is the man—that in exhuming the body he found the leg bones entire. Hence, you will encounter at the very outset that difficulty. If, however, you think that the weight of testimony with regard to that matter is with the plaintiff,—for it is for the plaintiff always to prove her case, the burden being on the plaintiff in all cases,—if you reach the conclusion that the person killed was the person exhumed, the next step in the inquiry is, was the person killed and exhumed the husband of this lady? Now you will look very carefully into all the incidents connected with the affairs down there to ascertain that matter, in connection, of course, with what other testimony has been offered. The lady herself testifies that the person produced here upon the stand, claiming to be her husband, is not, while he, on the other hand, testifies that he is, her husband.

Now, there is a vast deal of testimony presented here from various portions of the country. Some witnesses here say that they know William Wackerle, who was the husband in the old country; that

they were boys together, and they renewed their acquaintance in this country. There were others who did not know him in the old country, but knew the family, both this lady and her husband, up in Carver county, where, it may be presumed, and I think the testimony shows, about 70 families resided at that time, and nearly every one living there a pioneer life knew every one else. Then you have the testimony of those two persons in California. You have, on the other hand, the testimony of witnesses in Carver county ignoring or negativing, according to the statements of those witnesses the alleged fact that this William Wackerle was the husband. You have this testimony from Quincy—Dr. Bassett and those other gentlemen who knew him there. Now, in such a vast conflict of testimony, in which there is a question of personal identity to be established, it would seem that the mode of solving it would be, first, (supposing all parties testifying equally upright and desirous of only telling strictly the truth,) what witnesses had the best opportunity and were most likely to know the facts, and giving to such persons whose long acquaintance and whose special opportunities were such as to enable them to carry in their recollection distinctly the identity of a particular party, greater weight than those who only casually knew him, and who consequently might not, from having nothing particular to impress upon their memory the appearance of the man, remember him as distinctly, and giving to the latter less weight. Begin at the occurrence in Louisiana first; ascertain whether the person killed was the husband of this lady; next, whether the person exhumed was the person killed; then examine the testimony that has been produced here from various persons, who allege that they know this is the husband—some testifying that he is the husband, and some saying that they do not recognize him, though they did know the husband when he lived in Carver county.

Now, the court cannot aid you any further, gentlemen, in regard to this matter. I can only direct your attention to these salient matters, and you alone can solve the questions involved.

You will have to take the case, gentlemen, as it is, to ascertain whether the husband of this lady died, as contended, from a railroad accident on the twenty-fifth of December, 1873, or whether, on the other hand, he was not then killed, but is still alive. That is all there is in the case, as far as the court is concerned.

The jury retired, and, after a not very long conference, brought in a verdict in favor of plaintiff for $6,300 on the policy for $4,000, including interest, and for $206.99 on the payment of premium by the

plaintiff after the death of her husband, including interest.    There was subsequently a remittance entered by plaintiff of $300, and the court rendered judgment for the remainder, $6,206.99.

Whereupon the defendant moved the court to set aside the verdict and judgment, and grant a new trial of the case for the following reasons, to-wit:

"(1) Because the verdict is against law; (2) because the verdict is against the evidence; (3) because the verdict is against the weight of evidence; (4) because the verdict is so repugnant to the evidence in the case as to indicate prejudice and passion in the jury against the defendant, and of mere favor towards the plaintiff; (5) because there was no evidence in the cause of the death of the insured, William Wackerle; (6) the court erred in charging the jury that they were sole judges of the issues in the cause."

*A. R. Taylor*, for plaintiff.
*Glover & Shipley*, for defendant.

TREAT, D. J.    A full examination has been made of the evidence, which was one peculiarly for a jury.    It was on both sides full of doubts, inconsistencies, and contradictions.    Turn as we may in the analysis of the evidence, strange and irreconcilable aspects are presented.    The first point to be established by plaintiff was the death of her husband.    That rested on the testimony of several witnesses concerning the railroad accident, and the identity of the person killed thereby.

The evidence of the plaintiff and others as to the skeleton exhumed some four or more years after such killing, establishes to the satisfaction of the court that the exhumed skeleton was not that of the man killed, supposed to be William Wackerle, on December 25, 1872. The court directed the attention of the jury especially to that fact. Not that it was conclusive, but because it tended to show what weight should be given to other testimony.    It may be that the exhumed skeleton was not that of William Wackerle, and hence the accuracy of plaintiff's testimony became questionable.    Yet there was other evidence as to the death of the party killed, independent of the exhumation in 1877.    It was therefore for the jury to decide whether, despite the mistakes as to the identity of the skeleton, William Wackerle was killed as alleged.

The case as presented by the evidence was remarkable in many other aspects, concerning which it is useless to comment.    There are several depositions wanting which the court has been anxious to read and analyze, but by some accident they have disappeared. Hence the court has to rely on its memory as to their contents, and if

a new trial is granted the plaintiff after a long lapse of time [cannot be required] to supply the same.

So far as the court was justified in alluding to or commenting on the evidence, it pointed in its charge sharply against the plaintiff's claim, so far as identity depended on the exhumed skeleton. Still, the jury reached the conclusion that the plaintiff's husband was killed in 1872, as alleged, and consequently that the person produced by the defendant, and claiming to be the William Wackerle, (husband of the plaintiff,) was not what he pretended.

The case was tried at great length, and the largest scope given to a searching inquiry. Its novel aspects induced the court to admit every item of testimony which could shed light on the subject.

After full deliberation on the varied, inconsistent, and contradictory evidence, the jury reached a conclusion which was their exclusive province, and the court does not feel justified in interfering therewith. The motion for a new trial is overruled.